# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

D'ANTHONY LAMAR CHATTAMS,　　　　　　　Case No. 1:12-cv-666
　　Plaintiff

　　　　　　　　　　　　　　　　　　　　　　　　Beckwith, J.
　　vs　　　　　　　　　　　　　　　　　　　　　Bowman, M.J.


GLENN ROSSI, ET AL.,　　　　　　　　　　　　**REPORT AND**
　　Defendants　　　　　　　　　　　　　　　　**RECOMMENDATION**


　　　　Plaintiff, a prisoner in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, brings this action under 42 U.S.C. § 1983 alleging a violation of his constitutional rights by persons or entities acting under the color of state law. By separate Order issued this date, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

　　　　In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see*

*also* 28 U.S.C. §§ 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

Plaintiff, who is proceeding *pro se*, brings this action against Glenn Rossi, an assistant prosecuting attorney for Butler County, Ohio; the Ohio Department of Rehabilitation and Correction (ODRC); Reginald Wilkinson, the Director of ODRC in 2002-2003; "John Doe #1," the Warden of Chillicothe Correctional Institution (CCI) in 2003; "John Doe #2," the Ohio Attorney General in 2002-2003; "John Doe #3," the Ohio Attorney General in 2006-2007; the Ohio Bureau of Criminal Identification and Investigation (BCI); "John Doe #4," an ODRC employee who took a DNA sample from plaintiff at CCI in 2003; and "John Doe #5," a BCI employee who created a DNA profile from plaintiff's DNA sample in 2003 and 2004 and entered it into a DNA database. (Doc. 1, Complaint, p. 4). In the complaint, plaintiff essentially claims that defendants deprived him of his federal constitutional rights to due process and equal protection and to be free from unreasonable searches and seizures because, when he was incarcerated at CCI in 2003, he was "forced . . . to submit to a DNA draw" under an Ohio

statutory provision that was improperly applied to him in violation of state law. (*See id.*, pp. 5-8).

Specifically, plaintiff alleges that he was arrested on a robbery charge in 1998 and entered a plea agreement with the State in June 1999; as a result of the plea agreement, plaintiff was convicted of the robbery offense and placed on probation or community control. (*Id.*, pp. 5-6). Plaintiff avers that under Ohio law in effect at the time he entered his guilty plea, robbery did not constitute an offense that would have required him to provide a DNA sample for inclusion in DNA databases. (*Id.*, p. 6). Plaintiff states that on August 29, 2002, the Ohio legislature enacted "H.B. 427," which amended the DNA collection statute, Ohio Rev. Code § 2901.07, to require felons convicted of robbery to provide a DNA sample. Plaintiff claims, however, that the amendment had only prospective effect and, therefore, only applied to persons who were convicted and sentenced for robbery after August 29, 2002. (*Id.*, pp. 3-4).

Plaintiff alleges that his community control was revoked on February 3, 2003, and that, as a result, he was sentenced to two years in prison. (*Id.*, p. 7). Plaintiff states that upon his arrival at CCI in 2003, he was "forced, by state officials, Ohio Department of Correction, and the Warden at [CCI], to submit to a DNA draw" under the amended state statutory provision, which should not have been applied retroactively to him. (*Id.*). Plaintiff avers that his "illegally taken DNA was said to have matched a cold case from Sept. 29th, 1999, of an Aggravated Robbery." (*Id.*, p. 8). Plaintiff was prosecuted for the aggravated robbery crime, "went to trial in March of 2006, and was found guilty and sentence[d] to 10 years in prison." (*Id.*). Plaintiff asserts that the prosecution's case "rested solely upon DNA evidence taken from the crime scene in 1999, and the DNA match from the database." (*Id.*). Plaintiff states that defendant Glenn Rossi engaged in prosecutorial misconduct in that criminal matter by "lying in open court" and misleading both the

court and the defense "when we were trying to figure out how the State of Ohio was legally able to take my DNA, 7 days before trial," by stating "with a certainty that Plaintiff's DNA was acquired as a result of Plaintiff being incarcerated pursuant to a state law from the 1990's as a 'Repeat Violent Offender.'" (*Id.*, pp. 11-12).

Plaintiff alleges that the defendant Ohio Attorney General in 2006-2007 was aware of a decision issued by the Ohio Court of Appeals, Ninth Appellate District, in February 2006, holding that an amendment to Ohio's DNA collection statute "only applied to felons who had been convicted and sentence[d] on or after the effective date of the new bill." (*Id.*, p. 9). Plaintiff claims that although the decision "came down" prior to his trial for aggravated robbery, the defendant Ohio Attorney General did not notify him or others of the ruling, and instead, "work[ed] with the General Assembly to create an emergency measure, S.B. 262 & R.C. 2901.07 eff. date 7/11/06, . . . [to] [i]nsert the missing retroactive language into R.C. 2901.07 (regardless when guilty plea, conviction, or sentence occur[r]ed)" in "an attempt to make their illegal acts good." (*Id.*, pp. 9-10). Plaintiff alleges that when the new amendment to Ohio's DNA collection statute went into effect on July 11, 2006, he had "completed his 2 year prison sentence" for the community control violation. (*Id.*, p. 10). He also states that the "Ohio Supreme Court weighed in on the issues" in *State v. Consilio*, 871 N.E.2d 1167 (Ohio 2007), by (1) "[r]efus[ing] to allow the General Assembly to confer retroactivity of S.B. 262, onto prior versions of R.C. 2901.07;" and (2) holding that "[i]f a[] convicted felon had served his time, and was not on any type of supervised release when S.B. 262 & R.C. 2901.07 went into effect on 7-11-06, that felon was also exempt from DNA draw." (*Id.*).

Plaintiff avers that "most of the facts of this case" were only recently relayed to him in

5

March 2012 by "a law clerk showing from A to Z how state officials had violated [his] constitutional rights." (*Id.*, p. 12). He states: "Back in 2006, the 1st of March, I kept asking did they get my DNA legally, everyone said Yes. In 2009, going into 2010, I brought up the fact of being under a different H.B., but was told, it's untrue." (*Id.*).

As relief, plaintiff requests $2,500,000 in compensatory damages and $2,500,000 in punitive damages from each of the named defendants, as well as "special damages" to be assessed against each defendant of "$275.00 per day, from the day of civil case filing, until Plaintiff is completely release[d] from being incarcerated." (*Id.*, p. 18). Plaintiff has also submitted motions for declaratory and injunctive relief. In those motions, plaintiff has requested that "[a]ny convictions as a result of the illegal act of applying H.B. 427 retroactively be declared void and unconstitutional;" that defendants "be enjoined from further use of [his] DNA" sample; that his DNA profile be removed from DNA databases; that "all acts cease that are denying Plaintiff of life & liberty as a result of the Illegal Acts" of defendants; and that "[a]ll incarcerations" stemming from the defendants' illegal actions "be halted immediately."

Plaintiff's allegations are insufficient to state a claim upon which relief may be granted by this Court.

First, to the extent plaintiff seeks injunctive relief in the form of an order releasing him from his current detention based on his 2006 conviction for aggravated robbery, his sole federal remedy is a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 after he has exhausted his state court remedies. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Hadley v. Werner*, 753 F.2d 514, 516 (6th Cir. 1985). Plaintiff may not circumvent the rules and standards governing the filing and review of federal habeas petitions by seeking the same relief by way of a

federal civil rights action.

Second, to the extent plaintiff seeks damages under 42 U.S.C. § 1983 based on the claim that he should not have been prosecuted or convicted in Ohio for aggravated robbery given that the DNA evidence establishing his guilt was illegally obtained from the sample he was forced to give in 2003, plaintiff's allegations fail to state a claim for relief because a ruling in plaintiff's favor would necessarily cast doubt on the validity of the aggravated robbery conviction. *See Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *Cummings v. City of Akron*, 418 F.3d 676, 682-83 (6th Cir. 2005); *Schilling v. White*, 58 F.3d 1081, 1085-86 (6th Cir. 1995).

In *Heck*, the Supreme Court ruled that a § 1983 civil rights action seeking money damages on the basis of an allegedly unconstitutional conviction or sentence will not lie unless the plaintiff has already succeeded in having the conviction or sentence invalidated. *Heck,* 512 U.S. at 486–87. Under *Heck*, when a successful § 1983 civil rights action for damages would necessarily imply the invalidity of a plaintiff's conviction or sentence, the complaint must be dismissed unless the plaintiff demonstrates that the decision resulting in his confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Heck*, 512 U.S. at 486-87; *see also Edwards v. Balisok*, 520 U.S. 641, 643 (1997). The principle enunciated in *Heck* with respect to § 1983 claims also applies to conspiracy claims brought under 28 U.S.C. § 1985. *See Lanier v. Bryant,* 332 F.3d 999, 1005-06 (6th Cir. 2003); *Mason v. Stacey,* No. 4:07cv43, 2009 WL 803107, at *7 (E.D. Tenn. Mar. 25, 2009) (and cases cited therein).

It is clear from the face of the complaint that plaintiff's aggravated robbery conviction and

sentence still stand and have not been overturned or invalidated in accordance with *Heck*. Because a successful challenge against the defendants for their role in obtaining the allegedly illegal DNA evidence that resulted in plaintiff's prosecution and criminal conviction in 2006 for aggravated robbery would necessarily imply the invalidity of the underlying conviction and sentence imposed in that matter, plaintiff's claims for damages on that ground are barred by *Heck*.

Finally, to the extent plaintiff is not barred by *Preiser* or *Heck* from seeking damages and injunctive relief in the form of orders enjoining the use of his DNA sample and requiring the removal of his DNA profile from DNA databases on the ground that his Fourth Amendment right to be free from unreasonable searches and seizures was violated, plaintiff's cause of action is time-barred.

Plaintiff's civil rights complaint is governed by Ohio's two-year statute of limitations applicable to personal injury claims. *See, e.g., Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (holding that the "appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual"); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007) (and Supreme Court cases cited therein) (holding that the statute of limitations governing § 1983 actions "is that which the State provides for personal-injury torts"); *Zundel v. Holder,* 687 F.3d 271, 281 (6th Cir. 2012) (stating that the "settled practice . . . to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so" is applicable "to § 1983 actions and to *Bivens* actions because neither the Federal Constitution nor the § 1983 statute provides timeliness rules governing implied damages"). Although the statute-of-limitations is an affirmative defense, when it appears clear on initial screening of the complaint that the action is

time-barred, the complaint may be dismissed for failure to state a claim upon which relief may be granted. *See Jones v. Bock,* 549 U.S. 199, 215 (2007). *Cf. Fraley v. Ohio Gallia Cnty.*, No. 97-3564, 1998 WL 789385, at *1-2 (6th Cir. Oct. 30, 1998) (holding that the district court "properly dismissed" the *pro se* plaintiff's § 1983 civil rights claims under 28 U.S.C. § 1915(e)(2)(B) because the complaint was filed years after Ohio's two-year statute of limitations had expired); *Anson v. Corr. Corp. Of America,* No. 4:12cv357, 2012 WL 2862882, at *2-3 (N.D. Ohio July 11, 2012) (in *sua sponte* dismissing complaint under 28 U.S.C. § 1915(e), the court reasoned in part that the plaintiff's *Bivens* claims asserted "six years after the events upon which they are based occurred" were time-barred under Ohio's two-year statute of limitations for bodily injury).

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace,* 547 U.S. at 388 (emphasis in original). Under federal law, a cause of action accrues for statute of limitations purposes "when plaintiff[] knew or should have known of the injury which forms the basis of [his] claims." *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001). The "inquiry focuses on the harm incurred, rather than the plaintiff's knowledge of the underlying facts which gave rise to the harm." *Id.* at 501 (quoting *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991)). The statute of limitations commences to run when the plaintiff knows or, in the exercise of due diligence, has reason to know of the injury which is the basis for his cause of action. *Sevier v. Turner,* 742 F.2d 262, 273 (6th Cir. 1984); *see also Ruff*, 258 F.3d at 501.

Courts have held that causes of action for Fourth Amendment violations accrue on the date that the allegedly illegal search and seizure occurred. *See Harper v. Jackson*, 293 F. App'x 389, 392 n.1 (6th Cir. 2008); *see also Geary v. Brantley,* No. 4:12CV-P33-M, 2012 WL 3598286, at *4

9

(W.D. Ky. Aug. 17, 2012); *Williams v. Monroe Cnty., Kentucky,* No. 1:10CV-P123-M, 2010 WL 4006370, at *1-2 (W.D. Ky. Oct. 8, 2010). *Cf. Thomas v. McElroy*, 463 F. App'x 591, 592 (7th Cir. 2012) ("A claim asserting that a search violated the Fourth Amendment accrues–and the limitations period begins to run–as soon as the plaintiff knows, or should know, about the search and the facts making it unlawful."); *Villegas v. Galloway,* 458 F. App'x 334, 338 (5th Cir. 2012) (holding that plaintiff's claims arising out an allegedly unlawful search and seizure accrued in April 2003, when the search warrant was executed), *petition for cert. filed* (U.S. June 11, 2012) (No. 12-5417).

Here, plaintiff challenges the seizure of his DNA in 2003, which occurred when he was forced by state prison officials to submit to a DNA swab after his community control sentence imposed upon his 1999 robbery conviction was revoked. Because the DNA specimen was taken from plaintiff's person, plaintiff was well aware at that time of the injury that formed the basis for his Fourth Amendment claim. Plaintiff has conclusorily asserted that he was only recently made aware in March 2012 of "most of the facts of this case" by a law clerk, who explained to him "how state officials had violated [his] constitutional rights." (Doc. 1, Complaint, p. 12). However, plaintiff also states in the complaint that (1) when he was prosecuted for aggravated robbery in the "cold case" from 1999 based on his DNA match with evidence obtained from the crime scene, he, as well as the court and defense counsel, expressed concerns as early as March 1, 2006 about "how the State of Ohio was legally able to take [his] DNA;" (2) "in 2009, going into 2010," he again brought up the issue of the legality of his DNA extraction based on the fact that he was "under a different H.B." when he was convicted of robbery in 1999; and (3) in 2007, the Ohio Supreme Court issued its decision in *Consilio*, which supports his claim that his DNA sample was

10

improperly obtained in 2003 under an amendment to Ohio's DNA collection statute that should not have been retroactively applied to him. (*See id.*, pp. 10-12). Plaintiff has not specified the "facts" of which he was unaware prior to March 2012. However, it appears clear from the face of the complaint that, at the very latest, by the time the Ohio Supreme Court decided *Consilio* in August 2007, plaintiff knew, or should have known, that a DNA sample had been taken from him for entry into DNA databases in 2003, as well as the facts and legal basis for his claim that the DNA sample was obtained illegally.

Plaintiff's complaint, filed nine years after plaintiff was "forced" to give a DNA sample and five years after the Ohio Supreme Court issued its allegedly controlling decision in *Consilio*, is clearly time-barred. Although plaintiff contends that he was erroneously told in response to his earlier stated concerns that his DNA had been legally obtained, the accrual of a cause of action for statute of limitations is not postponed by "a *pro se* litigant's or an attorney's belated discovery or realization of the legal consequences of known facts. Rather, postponed accrual is in order only if the facts themselves supporting a legal claim were undiscoverable in a timely fashion, despite due diligence." *Dixon v. Wolfenbarger,* No. 2:11cv11882, 2012 WL 2004307, at *8 (E.D. Mich. May 4, 2012) (Report & Recommendation) (quoting *Fraser v. United States*, 47 F. Supp.2d 629, 630 (D. Md. 1999), and citing numerous other cases), *adopted*, 2012 WL 2003466 (E.D. Mich. June 5, 2012). Indeed, in *United States v. Kubrick*, 444 U.S. 111 (1979), the Supreme Court expressly rejected the argument that accrual of a cause of action may be delayed if a plaintiff receives erroneous advice about whether he has a viable claim. In holding that a claim under the Federal Torts Claim Act accrues when the plaintiff is aware of his injury, not when the plaintiff learns that the injury was negligently inflicted, the Court stated: "If [the plaintiff] fails to bring suit because

11

he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury." *Id.* at 124; *cf. McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465 (7th Cir. 1992) (citing *Kubrick* in emphasizing that "as to accrual, we, like the Supreme Court, have maintained that there is an important distinction between discovery of an *injury* and discovery of a *cause of action*") (emphasis in original). As the D.C. Circuit similarly reasoned in ruling that a habeas petition under 28 U.S.C. § 2555, which challenged the failure of counsel to file a notice of appeal in 1987, was time-barred:

> [The petitioner] knew the facts; what he now claims not to have known is the legal significance of those facts.
>
> Having been a witness to his own sentencing proceedings and aware that [counsel] did not filed a Notice of Appeal, [petitioner] at most may not have realized the potential legal significance of those facts until 2000. Given that the vast majority of prisoners could, like [petitioner] does before us, allege ignorance of the law until an illuminating conversation with an attorney or fellow prisoner, [petitioner's] alternative construction–that legal norms constitute "facts" for [statute of limitations] purposes–would in effect write the statute of limitations out . . ., rendering it a nullity. This we will not do.

*United States v. Pollard*, 416 F.3d 48, 55 (D.C. Cir. 2005); *cf. Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (rejecting the 28 U.S.C. § 2254 habeas petitioner's argument that the statute of limitations begins to run "when a prisoner *actually understands* what legal theories are available") (emphasis in original).

Accordingly, in sum, the undersigned concludes that the plaintiff's complaint is subject to dismissal at the screening stage because plaintiff has failed to state a claim upon which relief may be granted by this Court. To the extent plaintiff challenges his 2006 conviction and sentence in

Ohio for aggravated robbery, the complaint is barred from review under *Preiser* and *Heck*. To the extent that plaintiff seeks relief solely to remedy the Fourth Amendment injury he incurred in 2003, when he was forced to provide a DNA sample to prison authorities, the complaint is time-barred.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The complaint be **DISMISSED** with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith, and therefore, deny plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

                                                    *s/Stephanie K. Bowman*
                                                    Stephanie K. Bowman
                                                    United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

D'ANTHONY LAMAR CHATTAMS,       Case No. 1:12-cv-666
    Plaintiff

                                              Beckwith, J.
    vs                                       Bowman, M.J.

GLENN ROSSI, ET AL.,
    Defendants

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc